UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| MELINDA SINGLETON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:  11-416-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Melinda Singleton ("Singleton" or "the Claimant") and Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").  [Record Nos. 9, 12] Singleton argues that the Administrative Law Judge ("ALJ") erred in concluding that she is not disabled.  She seeks reversal of the ALJ's decision and an award of benefits or, in the alternative, remand of the case for further consideration.  The Commissioner contends that the ALJ's decision was proper and should be affirmed.

Because substantial evidence supports the administrative decision that Singleton was not disabled under Title II of the Social Security Act, and because Singleton's arguments are without merit, the Court will grant the Commissioner's motion for summary judgment and deny the relief sought by Singleton.

-1-

**I.**

On April 21, 2009,[1] Singleton applied for a period of disability and disability insurance benefits under Title II of the Social Security Act ("Act"), and Supplemental Security Income Benefits ("SSI") under Title XVI of the Act.[2]   [Tr., pp. 129, 136]   She alleged a disability beginning September 29, 2008, based upon bilateral carpal tunnel, arthritis, osteoporosis, and spondylolsis. [Tr., p. 140] Her applications were denied both initially and upon reconsideration. [Tr., p. 1, 7]   Singleton, along with her attorney Stacey H. Hibbard, and impartial vocational expert ("VE") Linda Taber, appeared before ALJ Roger L. Reynolds, on November 30, 2010, for an administrative hearing.   [Tr., pp. 24-63]   In a decision dated December 27, 2010, ALJ Reynolds found that Singleton was not disabled under sections 216(i) and 223(d) of the Act and thus was not entitled to a period of disability or disability insurance benefits, or SSI benefits. [Tr., pp. 10-19]

Singleton was forty-eight years old at the time of the ALJ's decision.[3]   [Tr., p. 129]   She has a twelfth-grade education and work experience as a machine operator.[4]   [Tr., pp. 141, 146]

---

1       The Commissioner, the Claimant, and the ALJ have used conflicting dates as the date of filing of the Claimant's application for disability insurance benefits and her application for Supplemental Security Income Benefits ("SSI") with the Social Security Commission. The correct date of filing of the Claimant's applications appears to be April 21, 2009.  [Tr., pp. 129, 136]

2       While the Claimant applied for SSI benefits on April 21, 2009, it appears she abandoned this claim as it was not included in her Request for Hearing by Administrative Law Judge or Request for Review of Hearing Decision.  [Tr., pp. 86, 123]  Regardless, ALJ Reynolds' finding that Singleton was not disabled, as defined under the Act, applies equally to her claim for SSI benefits.

3       Claimant was forty-five years old on her alleged onset date of disability.  [Tr., p. 129]

4       VE Taber classified this employment as medium and semi-skilled work.  [Tr., p. 59]

Her alleged disability results from back pain, bilateral carpal tunnel syndrome, hip pain, and arm, neck, and shoulder pain.[5]  [Tr., pp. 140, 345, 357]

After reviewing the record and the testimony presented at the hearing, the ALJ concluded that Singleton suffered from a combination of severe impairments, including "lumbosacral degenerative disc disease with spondylolisthesis of L5 on S1, cervical spine degenerative disc disease, mild bilateral carpal tunnel syndrome, osteoporosis, arthritis, multiple myalgias and rule out fibromyalgia."  [Tr., p. 12]  Additionally, ALJ Reynolds concluded that Singleton's single panic attack in June 2005 and her alleged rhinitis do not quality as severe impairments.  [*Id.*] Notwithstanding these impairments, or combination of impairments, ALJ Reynolds found that Singleton retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567(b), and that the Claimant was not disabled.  [Tr., pp. 1, 16]  As a result of the ALJ's assessment, Singleton was denied a period of disability and disability insurance benefits and SSI benefits.  [Tr., p. 18]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"  *Combs v. Comm'r of Soc. Sec.*,

---

5       Singleton states in her supporting memorandum that her alleged disability is due to "severe degenerative disc disease in the lumbar spine, multiple joint problems, bilateral carpal tunnel syndrome, arthritis, osteoporosis, and spondylosis."  [Record No. 9-1, p. 1]  However, Singleton only alleged to suffer from carpal tunnel syndrome, arthritis, osteoporosis, and spondylolsis in her Disability Report.  [Tr., p. 138]

459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that she is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must show that she suffers from a severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether she can perform her past work.  If she can, she is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work.  If she cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *White v. Comm'r of Soc. Sec.*, 312 F.

App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## III.

Singleton contends that the Commissioner erred in reaching an unfavorable decision in her case because: (1) the ALJ did not properly assess the opinion of her long-term medical provider Nurse Practitioner Terri Overbee; (2)  the ALJ's decision was not supported by

-5-

substantial evidence and the ALJ failed to examine and properly weigh all the medical evidence in the record; and (3) the ALJ did not properly consider the credibility of Singleton's statements regarding her pain and disabling ailments. She argues that the ALJ's decision should be reversed or, in the alternative, remanded for a new hearing.

### A.    Weight of Medical Opinion of Nurse Practitioner Overbee

On July 20, 2010, nurse practitioner Overbee completed a RFC Questionnaire, which contained her opinion regarding Singleton's disabilities. [Tr., pp. 450-56] Nurse practitioner Overbee limited Singleton to sitting no more than thirty minutes at a time and standing no more than fifteen minutes at a time. [Tr., p. 453] She opined that Singleton could not continuously walk for over one hour, and that in doing so, Singleton required the assistance of a walker. [*Id.*] Furthermore, nurse practitioner Overbee stated that Singleton could only lift less than ten pounds "ver infrequently," and that the Claimant was only capable of working less than six hours total in a given day. [Tr., pp. 453-44]

Singleton argues that ALJ Reynolds did not properly evaluate the findings and prognosis of nurse practitioner Terri Overbee. Specifically, she alleges that ALJ Reynolds: (1) improperly compared and discredited nurse practitioner Overbee's opinion to that of Dr. Shojaei; (2) erred in not properly considering the opinions of nurse practitioner Overbee as medical "opinion of a long standing 'other' medical source as required by 20 CFR § 404.1513(d)(1);" and (3) failed to explain the weight afforded to the opinions and findings of nurse practitioner Overbee as required by SSR 06-03p. [Record No. 9-1, p. 14]

-6-

A treating source's medical opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's record.   20 C.F.R. § 404.1527(d)(2).   However, an "ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'" *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 509 (6th Cir. 2006) (per curiam) (quoting *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs.").   The regulations also provide that a physician's opinion regarding whether a claimant is disabled or unable to work will be given no "special significance."   20 C.F.R. § 404.1527(e)(3).   Further, the ALJ must explain his reasons for the weight he gives a treating-source opinion. 20 C.F.R. § 404.1527(d)(2); *see also* SSR 96-2p, 1996 SSR LEXIS 9, at *11-12 (July 2, 1996).

As the Commissioner correctly points out, a registered practical nurse is not a medical doctor.  Under the applicable regulations, a nurse practitioner is not an acceptable medical source for purposes of providing medical opinions.  20 C.F.R. § 404.1513(a).  Instead, the person is considered within the category of "other sources" whose opinion is not entitled to controlling weight.  *See* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("Information from these 'other sources' cannot establish the existence of a medically determinable impairment.  Instead there must be evidence from an 'acceptable medical source' for this purpose.").  Thus, the ALJ should consider:

- How long the source has known and how frequently the source has seen the individual;

- How consistent the opinion is with other evidence;

- The degree to which the source presents relevant evidence to support an opinion;

- How well the source explains the opinion;

- Whether the source has a specialty or area of expertise related to the individual's impairment(s), and

- Any other factors that tend to support or refute the opinion.

*Id.* at *4-5.

The Sixth Circuit has consistently held that the opinions of non-acceptable medical sources are not binding on the ALJ, and that the ALJ has discretion to determine the appropriate weight to afford these opinions based on all the evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997) (holding that where the ALJ considered the opinions of non-acceptable medical sources and weighed them with all the other evidence in the record, the court rejected claimant's argument "that the ALJ was required to accord any more deference than this"); *see also Brown v. Astrue*, 2012 WL 4498526, at *2 (E.D. Ky. Sept. 28, 2012). Here, the record shows that the ALJ properly assessed the opinions of nurse practitioner Overbee and provided a proper explanation for discounting her opinion.

Singleton's argument that Overbee's opinions were entitled to greater weight because of the length of the treatment relationship, but that the "ALJ elected to give no weight to the RFC limitations stated by Nurse Overbee" is without merit. [Record No. 9-1, p. 15] ALJ Reynolds

specifically discussed nurse practitioner Overbee's findings throughout his decision. However, he found her assessment to be inconsistent with the medical evidence of record. [Tr., pp. 13-16]

> In addressing the objective medical evidence of record, ALJ Reynolds found that:

> The record does not demonstrate ineffective ambulation or the need for a hand-held assistive device. Despite Nurse Overbee's assertion that the claimant requires a walker to walk for up to one hour, there is no evidence the claimant is unable to sustain a reasonable walking pace sufficient to carry out activities of daily living, including traveling without the need for companion assistance. The longitudinal clinical record fails to establish severity and duration of pain at the alleged levels. Last, claimant has failed to stop smoking, as advised; doing so would markedly ameliorate the symptoms, including pain.

[Tr., p. 15]

Further, while nurse practitioner Overbee opined that, due to Singleton's alleged conditions of fibromyalgia, osteoporosis, and degenerative disc disease, her prognosis was fair to poor for normal return to activities of daily living, and that her "condition is not improving and will not improve with time . . ." [Record No. 9-1, p. 8; Tr., pp. 450-53] ALJ Reynolds found this assertion to be unpersuasive. [Tr. p, 15] He stated in his decision that "inflammatory arthritis, multiple sclerosis, and fibromyalgia, requires disorganization of motor function, visual or mental impairments, or significant reproducible fatigue of motor function with substantial muscle weakness on repetitive activity . . . resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved in the process." [*Id.*] ALJ Reynolds considered that the Singleton lacked "*any* disorganization of motor function, her visual acuity is satisfactory, and any fatigue or weakness is not the result of fibromyalgia," and that no trigger point analysis — a required test for determining the existence of fibromyaligia — was conducted. [*Id.*]

The RFC determination is a matter reserved for the ALJ.  *See* 20 C.F.R. § 404.1546(c); *see also Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004) ("[The RFC] determination is expressly reserved for the Commissioner.").  In making this determination, the ALJ considers the medical evidence, non-medical evidence, and the claimant's credibility.  The Sixth Circuit has recognized that "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of the claimant's residual functional capacity." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (internal quotation marks and citation omitted).  The ALJ need not "give any special significance to the source of an opinion on issues reserved to the Commissioner."  20 C.F.R. § 404.1527(d)(3).  An ALJ's finding on the RFC will be upheld where it is supported by substantial evidence.

While nurse practitioner Overbee's RFC determination is more restrictive than that of ALJ Reynolds, this is ultimately a determination reserved for the ALJ to make and, therefore, her RFC finding is not binding on the ALJ.  After considering not only nurse practitioner Overbee's assessment but also the objective medical evidence of record, the Claimant's own subjective complaints of pain, and the findings of the Kentucky Disability Determination Services and the consultative evaluators, ALJ Reynolds did not agree with nurse practitioner Overbee's assessment that Singleton was completely disabled.  As required, ALJ Reynolds' determination is supported by substantial evidence and he reached this determination after review of the entire record.  Thus, the Court rejects the Claimant's arguments that the ALJ failed to give appropriate weight to the opinions of Overbee.

### B.    Substantial Evidence

Next, Singleton argues on appeal that ALJ Reynolds both ignored and "mischaracterized the medical evidence of record to construe the evidence as contrary to Ms. Singleton's allegations of disabling pain" to come to an unfavorable decision.  [Record No. 9-1, p. 8] Specifically, she contends that the medical opinions and findings of each Dr. Bux, Dr. Kiefer, and Dr. Shojaei were mischaracterized by the ALJ.  [*Id.*, pp. 8-9]  Moreover, Singleton argues that ALJ Reynold's decision was not based on substantial medical evidence.

To support this contention, Singleton argues that while the ALJ cited to Dr. Bux's treatment notes, he "neglected to cite, from the same report that after undergoing the cervical spine injections, Dr. Bux noted she was still having severe back pain that was substantiated by medical testing."  [Record No. 9-1, p. 8; Tr., pp. 14, 352]  This is a misstatement of the ALJ's opinion.  The first sentence of ALJ Reynolds' analysis discussing Singleton's impairments states: "[t]he Ephraim McDowell Medical Center (Dr. Madar Bux) noted epidural steroid injections were useless and referred claimant to Dr. Kiefer, a spine specialist."  [Tr., p. 13]

Next, Singleton asserts that the ALJ omitted any discussion of Dr. Kiefer's findings that a "rather marked narrowing of the disc space at this level," which constituted a "significant anatomical finding in her [Singleton's] lumbar spine."  [Record No. 9-1, p. 9; Tr., pp. 300, 307] Again, this is incorrect.  Despite incorrectly referring to it as an MRI, the ALJ expressly reviewed and discussed the lumbar x-ray, which "showed congenital grades 1-2 spondylolisthesis of roughly sixteen millimeters, which did not change with flexion or extension."  [Tr. p, 13]  Singleton also argues that Dr. Kiefer's records do not state that he was

unable to find a the source of her symptoms and that she was not a candidate for surgery, as noted by ALJ Reynolds. [Record No. 9-1, p. 9] However, Dr. Kiefer's records contain exactly that statement — "Ms. Singleton has what appears to be a *stable* longstanding spondylolisthesis. I am not sure what the source for her symptoms is . . . given her osteoporosis and continued tobacco abuse, she is certainly not a candidate for lumbar decompression and fusion." [Tr., p. 300 (emphasis added)]

Singleton also argues that the ALJ mischaracterized the findings of Dr. Shojaei when he released her to return to work by comparing his findings to those of nurse practitioner Overbee. [Record No. 9-1, pp. 12-13] Singleton asserts that the ALJ did not take into account that Overbee was treating Singleton for not just her neck and shoulder pain, but also her back pain, and that Overbee's assessment was based on findings over a longer period of time. [*Id.*] Additionally, Singleton argues that the ALJ erred by not stating the non-specific restrictions imposed by Dr. Shojaei. [*Id.*] This argument is unpersuasive. As discussed above, nurse practitioner Overbee's findings are not binding on the ALJ. Furthermore, ALJ Reynold's did note the non-specific restrictions stated by Dr. Shojaei – "[i]t was advised that she may return to work but she should not do the exact work that previously caused her upper extremities symptoms." [Tr. p., 13]

Singleton also contends that ALJ Reynolds erred when he stated that Dr. Shojaei reported that the claimant "averred an 80% reduction in pain after physical therapy in 2008." [Tr., p. 13] Singleton asserts that ALJ Reynolds mistakenly citing to the wrong doctor's report is tantamount to an impartial administrative law judge purposefully "mischaracterizing the medical evidence

-12-

in a serious manner"in order to "facilitate his erroneous decision that Ms. Singleton is not disabled." [Record No. 9-1, p. 13] While there are no reports of an 80% reduction in pain as a result of physical therapy, Dr. Kiefer did note an 80-90% reduction in pain levels following a series of ESIs. [Tr., pp. 215-18] Additionally, Singleton's physical therapy release form states that her goal of a 50% reduction in pain was achieved. [Tr., p. 241] Despite ALJ Reynolds incorrectly citing one of these reports, this error was harmless because the ALJ considered both findings when making his decision. *See Burgin v. Comm'r of Soc. Sec.*, 420 Fed. App'x 901, 902 (11th Cir. 2011) (holding that even if ALJ erred when he concluded that social security claimant's sleep apnea, obesity, and edema were no severe impairments, for purpose of eligibility for disability insurance benefits and SSI benefits, error was harmless since ALJ considered all of claimant's impairments in combination at later steps in evaluation process). And while Dr. Shojaei did not have this assessment in his medical records, he did note that Singleton was "a whole lot better" and that "her pain and paresthesias have almost fully resolved." [Tr., p. 226]

Despite most of Singleton's allegations of ALJ Reynolds both ignoring evidence and mischaracterizing evidence being without merit,[6] ALJ Reynolds' decision is based on the requisite level of substantial evidence to support his finding of Singleton not being disabled. *See Rogers*, 486 F.3d at 241; *see also Buxton*, 246 F.3d at 772 ("[F]indings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion."). Additionally, an ALJ is not required to cite to every piece of evidence

---

6    Additionally, Singleton asserts that the ALJ did not consider a bone density scan, "in order to justify his unfavorable decision." [Record No. 9-1, p. 10] This, however, is without merit. ALJ Reynolds discussed the results of the bone density scan in detail and noted that Singleton's results were demonstrative of osteoporosis. [Tr., pp. 13-14].

within the record. *See Kornecky*, 167 F. App'x at 508.  Further, ALJ Reynolds notes throughout his decision that his determination was reached after consideration of the entire record. *See McDonald v. Astrue*, No. 11-1263, 2012 WL 2989935, at *7 (10th Cir. July 23, 2012) (*quoting Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (noting the "well-established principle of taking [the] ALJ at his word when he indicates he considered all of the evidence")).

While ALJ Reynolds did acknowledge that Singleton had suffered from lower back pain for many years, he did not find this impairment to be severely disabling.  He declined to adhere to nurse practitioner Overbee's finding of complete disability.  Rather, relying on the subjective statements of pain of Singleton, the objective medical record, and the RFC finding of the Kentucky Disability Determination Services, ALJ Reynolds found that Singleton was not disabled.  In short, substantial evidence supports the decision of the ALJ that Singleton's impairments, either individually or in combination, did not render her completely disabled.

### C.    Credibility Determination

Finally, the Claimant asserts that ALJ Reynolds credibility findings regarding Singleton are "patently deficient."  [Record No. 9-1, p. 10]  She argues that where a decision regarding disability cannot be made on the basis of medical evidence alone, the ALJ was required to consider the individual's subjective statements of pain and symptoms in conjunction with the rest of the relevant evidence in the record, and that he did not do so.  [*Id.* p. 16]  Singleton maintains that ALJ Reynolds failed to provide any analysis to support his dismissal of her subjective statements regarding the severity of her disabilities.

-14-

When an ALJ makes a determination regarding a claimant's credibility, he is entitled to a great amount of deference. *See Buxton*, 246 F.3d at 773; *see also Williamson v. Sec'y of Health and Human Servs.*, 796 F.2d 146, 150 (6th Cir. 1986). The ALJ is in a unique position to "observe the claimant and judge [her] subjective complaints." *Id*. In fact, an ALJ is "charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. As a result, an ALJ's credibility determinations are "entitled to deference on judicial review." *Boyett v. Apfel*, 8 F. App'x 429, 434 (6th Cir. 2001). However, if the ALJ "rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Brown*, 35 F.3d 1027, 1036 (6th Cir. 1994). Additionally, the ALJ's credibility determination must be supported by substantial evidence. *See Walters*, 127 F.3d at 531 (quoting *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 386-87 (6th Cir. 1978)).

The Sixth Circuit has further clarified the court's analysis of claimants' subjective allegations of pain and has developed a two-prong test.

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531.

ALJ Reynolds found that Singleton's "credibility is fair, considering that [her] reaction to pain varies. Even so, the record is lacking in the requisite objective medical evidence of record required for a favorable decision." [Tr., p. 16] ALJ Reynolds went on to state that after consideration of the evidence Singleton's medically determinable impairments could reasonably

-15-

be expected to cause her alleged symptoms. [*Id.*] However, he noted that "the Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." [*Id.*]

While the Claimant contends that her allegations of severe pain have been consistent throughout her medical history, the record does not support this assertion. The record contains a number of inconsistent subjective statements of pain as well as inconsistent objective medical evidence. ALJ Reynolds analyzed and discussed a number of these throughout his decision.

The ALJ stated his reasons for finding Singleton's testimony to be unconvincing. For instance, the ALJ analyzed a cervical MRI without contrast conducted on September 30, 2008, which showed minor degenerative changes to the cervical spine without significant spinal or neurotoraminal stenosis. [Tr., p. 214] Additionally, on January 8, 2009, a MRI of the lumbar spine was compared to the results of a 2004 lumbar spine MRI and although significant degenerative changes were noted at the L5 on S1, "[l]ittle if any significant change has occurred when compared to the 2004 MRI." [Tr., pp. 240, 353] The ALJ also considered the medical opinion of Dr. Shojaei, in which he stated that the Claimant could return back to work, albeit in a less demanding role than her previous position. [Tr., pp. 13, 15, 225, 381]

The ALJ also considered the subjective reports of pain from Singleton as recorded in multiple medical records. Singleton herself stated that she reached a level of 80-90% reduction in pain levels following a series of cervical epidural steroid injections. [Tr., pp. 215-18, 350-52] She also reported to Dr. Shojaei that she was "a whole lot better" after treating her carpal tunnel

-16-

with wrist splints when needed and with Neurontin.  [Tr., p. 226]  As of February 2009, Singleton met her goal of 50% reduction in pain levels in physical therapy before she was discharged for failure to return.  [Tr., p. 241]  Reports of 80-90% reduction in pain and a 50% reduction in pain are not indicative of a severe disabling impairment.

Further, Singleton testified that the impairments which led to her being unable to continue her job at American Greetings was the result of neck, shoulder, and arm pain, not because of lower back pain.  In her hearing in front of the ALJ, Claimant stated: "[p]hysically, it was a nightmare . . . I couldn't feel, from the tips of my fingers, up into my neck."  [Tr., p. 30] However, on appeal Claimant now contends that her more serious ailment results from lower back pain, despite having claimed to have suffered from back pain for many years before the alleged onset date of disability.  [Tr., pp. 13, 227, 269]  ALJ Reynolds noted this discrepancy. [Tr., p. 13] Additionally, although Singleton testified to suffering disabling pain, she has treated this pain with over-the-counter drugs and has not been prescribed any narcotic pain medication. [Tr., p. 14]  The ALJ also noted that the Claimant was continuously warned by her treating physicians that her continued tobacco use only exacerbated her ailments, and that largely due to her tobacco use,  surgery was not an option.  [Tr., p. 15]  These reasons provide substantial evidence for ALJ Reynolds' credibility determination.

As noted above, an ALJ is afforded a great amount of deference in weighing a claimant's subjective complaints of pain and in determining their overall credibility.  ALJ Reynolds' decision sets out the reasoning and analysis behind his credibility determination regarding Singleton's complaints of disabling pain.  He properly considered the medial evidence contained

in the record as well as Singleton's own testimony and, as evinced above, his credibility finding was based on substantial evidence. For these reasons, the Court finds no error with ALJ Reynolds' credibility determination of Singleton.

**IV.**

Although Singleton has established that she suffers from some medical impairments, she has not established that she is disabled as defined by the Act. After reviewing the record, the Court does not find any of the Claimant's arguments to be persuasive. The ALJ did not commit a reversible error and his decision is well-supported by substantial evidence. Accordingly, it is hereby

**ORDERED** as follows:

(1)     Plaintiff Melinda Singleton's Motion for Summary Judgment [Record No. 9] is **DENIED**.

(2)     Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 12] is **GRANTED**.

(3)     The administrative decision of Administrative Law Judge Roger L. Reynolds will be **AFFIRMED** by separate judgment entered this date.

This 23rd day of October, 2012.



**Signed By:**

**_Danny C. Reeves_**

**United States District Judge**